# UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

PHILIP CANTORE,

    Plaintiff,

v.

HEALTH RESOURCE SOLUTIONS, INC., an New Jersey corporation,
    Defendant.

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination and retaliation for engaging in activity protected by Title I of the Americans with Disabilities Act of 1990.

2. The plaintiff is Philip Cantore of the County of Cook in the State of Illinois.

3. The defendant is Health Resource Solutions, Inc. ("HRS"), 1806 South Highland Avenue, Lombard, Illinois.

4. HRS's registered agent is CT Corporation System, 208 S. LaSalle, Suite 814, Chicago, Illinois.

5. Cantore was employed by HRS and traveled to patients' homes in Northern Illinois.

6. Cantore was employed by the defendant from about March of 2020, to June 25, 2021.

7. The defendant discriminated against Cantore in his employment and in addition, the defendant retaliated against Cantore by constructively terminating

1

       his employment by reducing his hours, taking away his benefits and making it impossible to support himself and his family and causing him damage.

8. Cantore timely filed a charge with the United States Equal Employment Opportunity Commission, on or about July 7, 2021. A true and correct copy of the charge is attached hereto as Exhibit 1.

9. Plaintiff understands that it is the policy of both the EEOC and the Illinois Department of Human Rights to cross-file with the other agency all charges received. Plaintiff has no reason to believe that this policy was not followed in this case.

10. The EEOC has issued a Notice of Right to Sue, which was received by Plaintiff shortly after its issuance date of July 27, 2021. A true and correct copy of the Notice is attached as Exhibit 2.

11. Defendant discriminated against Plaintiff because of his disability (Crohn's Disease), in violation of Title I of the Americans With Disabilities Act of 1990.

12. Jurisdiction over the statutory violation alleged is conferred by 28 U.S.C. §1331, 28 U.S.C. §1343(a)(3) and 42 U.S.C. §2000e-5(f)(3), and by 42 U.S.C. §1988.

13. The defendant illegally refused Plaintiff's request for a temporary accommodation in violation of Title I of the ADA, knowing that this refusal would cause his disability to significantly impair his ability to perform his work functions. Instead, the defendant forced Plaintiff to use his paid time off and then when that was gone, the Defendant told him his only option was

either to work full time, with no accommodation or to become a part time employee and give up all his benefits.

14. After retaliating against Plaintiff for asserting his rights protected by the laws identified in Paragraph 11 above, Defendant retaliated further by giving him irregular appointments, appointments in areas he was not assigned to or for which he had previously indicated he would be unavailable.

15. The facts supporting Cantore's claim of discrimination and retaliation are as follows:

16. Plaintiff has been diagnosed with and suffers from Crohn's Disease. Crohn's disease is a type of inflammatory bowel disease. It causes inflammation of the digestive tract, which can lead to abdominal pain, severe diarrhea, fatigue, weight loss and malnutrition. Inflammation caused by Crohn's disease can involve different areas of the digestive tract in different people. This inflammation often spreads into the deeper layers of the bowel. Crohn's disease can be both painful and debilitating, and sometimes may lead to life-threatening complications. One of the main causes of flare ups is stress.

17. The defendant has been aware of Plaintiff's disease before, during and after all the relevant time periods.

18. On February 19, 2021, Plaintiff requested temporary reduced hours (3-4 patients per day down from 7) until the weather calmed in 1-2 weeks due to Crohn's flare ups resulting from stress. He explained the snowstorm made for dangerous driving conditions, reduced parking (meaning it would take an average of 30 minutes to find parking and walk to the resident's home), and

dangerous walking conditions due to unkept sidewalks and stairways. Plaintiff had also recently fell on icy stairs three times, prior to making this request. He had reported all of those slip and falls too.

19. Stress triggers these Crohn's flare ups. Theses flare ups include, but are not limited to, severe abdominal pain and cramping, diarrhea, fatigue and, at times, the inability to control bowel movements.

20. Many restaurants and stores were closed or made their bathrooms off-limits to the public, which made for challenging conditions, as well as panic due to Plaintiff's constant Crohn's flare ups.

21. Plaintiff was told by his supervisor, Gladies Pascua, that she would talk to "the higher ups", later to be revealed as Human Resources supervisor, Stephanie Bolek and Don Angela, who is Director of Nursing, and was Plaintiff's former supervisor.

22. Gladies Pascua then told Plaintiff that he would have to use his paid time off for any hours missed or would have to change his employment from full- to part-time and lose all his benefits.

23. On February 26, 2021 Plaintiff was forced by the options presented to him to change from full-time to part-time.

24. Plaintiff's employment was based on a point system. He was to have 15 points per week minimally to keep the part-time position, down from 35 points he had when full-time. Points are earned by seeing patients at their appointments.

25. Between March 15 and June 25 of 2021 Plaintiff was not able to accumulate 15 points per week each and every week, through no fault of his own. Sometimes he was not scheduled enough. Other times the patients refused or canceled appointments. Plaintiff would report to the supervisor and scheduler each day this happened to receive replacement patients. The majority of these requests, up to four days per week, went ignored. If Plaintiff did receive a response, it would come too late in the day to see any additional patients, or the next day when it was too late to add patients, or he was finished working for the day.

26. Between March 8 and May 28, 2021, Plaintiff is not only out of his territory (the northern part of Defendant's "central city" territory), but also in the only area he stated he would not work when he was interviewed to be hired, several times.

27. On April 8, 2021, Gladies Pascua, notified Plaintiff that he had late documentation, which was 100% inaccurate. Plaintiff always finished all of his documentation on time. He even took the extra unpaid step to research this claim and found out not only was it not his note, it was a physical therapy note, which was not even his discipline. This caused concern and stress due to fear of disciplinary actions against him, which Plaintiff's supervisor threatened weekly during their Thursday meetings.

28. On June 13, 2021, a few hours prior to the typical 6:00 p.m. schedule posting time, Plaintiff asked Defendant's scheduler if his schedule could be finalized earlier than the regular 6:00 p.m. Plaintiff's team was told by Gladeis Pascua

numerous times that they could make this request and it would not be an issue to be fulfilled by the scheduler. Instead, the scheduler responded and refused to provide Plaintiff's schedule early and he had to wait until the regular time.

29. On June 17, 2021, Plaintiff moved three patients from a day he had a Crohn's flare up to Saturday, June 19, which he had previously been told was acceptable and even appreciated so no visits for the patients would be missed. On June 19, 2021, when it was too late for any other alternatives, the scheduler emailed Plaintiff and told him he could not move patients onto Saturday and to log missed visits for all three patients.

30. On June 25, 2021, after many months of suffering, Plaintiff submitted his immediate resignation to Gladeis Pascua due to Defendant's unfair treatment, refusal to accommodate his disability, for the retaliatory treatment after he complained and finally, because he could not afford to support his family on the decreased pay with no benefits. She never responded or reached out to Plaintiff.

31. Not only was Plaintiff's professional life crumbling, but the stress of his discriminatory treatment was causing troubles with his marriage and family life. Plaintiff had previously been in therapy to help him deal with his health and personal issues and had achieved some level of calm where he was able to stop therapy. Unfortunately, these incidents have undone what had been accomplished and he has been forced back into therapy because of the treatment he had received while employed by HRS.

**COUNT I DISCRIMINATION IN VIOLATION OF TITLE I**

32. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 31 as if fully set forth herein.

33. Title I makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment, or to take any adverse action against any person on the basis of disability.

34. The above-described acts and omissions of HRS were taken against Plaintiff because of his disability. He has been diagnosed and suffers from Crohn's Disease.

35. Defendant intentionally discriminated against Plaintiff on account of his disability, intentionally treating similarly situated non-disabled employees more favorably than Plaintiff and retaliating against him for opposing such discriminatory treatment and because he complained about such discrimination.

36. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered emotional distress, economic, compensatory, and other consequential damages.

37. Defendant's actions constituted willful, reckless, and malicious discrimination in violation of Title I, entitling Plaintiff to punitive damages, thereunder.

**COUNT II- RETALIATION IN VIOLATION OF TITLE I**

38. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 37 as if fully set forth herein.

39. Title I makes it unlawful for an employer to retaliate against an employee for engaging in a statutorily protected activity by, inter alia, opposing unlawful discrimination.

40. Defendant retaliated against Plaintiff by refusing Plaintiff's request for a temporary accommodation in violation of Title I of the ADA, knowing that this refusal would cause his disability to significantly impair his ability to perform his work functions. Instead, the defendant forced Plaintiff to use his paid time off and then when that was gone, the Defendant told him his only option was either to work full time, with no accommodation or to become a part time employee and give up all his benefits.

41. After retaliating against Plaintiff for asserting his rights protected by the laws identified in Paragraph 11 above, Defendant retaliated further by giving him irregular appointments, appointments in areas he was not assigned to or for which he had previously indicated he would be unavailable.

42. Defendant's actions constituted willful, reckless, and malicious retaliation in violation of Title I, entitling him to punitive damages hereunder.

43. As a direct and proximate result of Access's unlawful conduct, Plaintiff has suffered emotional distress, economic, compensatory, and other consequential damages.

WHEREFORE, the Plaintiff asks that the Court grant him following relief:

(a) Award compensatory damages in an amount to be determined at trial;

(b) Award her back pay, front pay, lost wages, punitive damages, prejudgment interest, post-judgment interests, and costs, including reasonable attorneys fees and expert witness fees; and

(c) Grant such other relief as the Court may find appropriate.

October 22, 2021  Respectfully submitted,

/s/ Nathaniel H. Tone

Attorney for PHILIP CANTORE

Nathaniel H. Tone

The Tone Law Office
8700 W. Bryn Mawr Ave., Suite 810N
Chicago, Illinois 60631
847-414-7506
ntone@thetonelawoffice.com